**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| POLARIS INNOVATIONS LIMITED, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-16-CV-451-XR |
| | § | |
| DELL, INC., and NVIDIA | § | |
| CORPORATION, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

On this date, the Court considered Dell Inc.'s and NVIDIA Corporation's Motion to Transfer Venue (Docket no. 25) and the corresponding responses and replies. After careful consideration, the motion is GRANTED and this case is hereby TRANSFERRED to the United States District Court for the Northern District of California.

## BACKGROUND

This is a patent infringement case. Plaintiff Polaris Innovations Limited is an Irish corporation and owner of the six patents-in-suit. Docket no. 1 at 1, 3. These highly technical patents relate to various methods, circuits, apparatuses, and controllers typically found within computer components such as processors, graphics processing units ("GPUs"), graphics cards, and devices. *Id.* at 11–13.

Defendant NVIDIA is a Delaware corporation with its principal place of business in Santa Clara, California.[1] Docket no. 1 at 2. According to Polaris' complaint, NVIDIA designs, sells, manufactures, and contracts with third-parties to manufacture certain computer components

---

[1] This order frequently discusses parties, witnesses, and evidence located in various cities in California. Unless otherwise noted, all of these cities are in the Northern District of California.

such as GPUs, graphics cards, mobile processors, "systems-on-chips," and other similar parts. Docket no. 1 at 2–3.

Defendant Dell is a Delaware corporation with its principal place of business in Round Rock, Texas, a city near Austin, and located within the Western District of Texas. *Id*. at 2. According to Polaris' complaint, Dell designs and produces products such as personal computers, servers, and tablet computers which incorporate a variety of technical components, including some developed and manufactured by NVIDIA. *Id*.

Polaris brought causes of action for patent infringement against NVIDIA and Dell. Polaris alleges that NVIDIA is infringing all six of the patents-in-suit and that Dell is infringing three. At a high level, Polaris alleges that NVIDIA is infringing by manufacturing, designing, using, selling, offering to sell, or importing components and products that function alongside computer memory that complies with certain industry-set standards. When employed and used with this industry standard memory, NVIDIA's products and components allegedly infringe Polaris' patents.

The parties dispute the nature of Polaris' accusations against Dell. The parties do not dispute that on some of the patents and claims, Polaris accuses Dell of infringing by incorporating infringing NVIDIA components into final products, which Dell then re-sells.[2] The parties dispute, however, whether Polaris accuses Dell of infringing in ways beyond merely re-selling infringing NVIDIA components.[3] As the parties frame it, the issue is whether Polaris' claims against Dell are merely "peripheral" to Polaris' claims against NVIDIA.

---

[2] For example, one of Polaris' causes of action for infringement against Dell states: "These 'Dell 976 Patent Infringing Products,' include, for example, Dell's computer products that use NVIDIA's GDDR5 graphics cards and/or NVIDIA's GPUs in combination with GDDR5 memory, and GDDR5 graphics card products, such as [certain models of laptop and desktop computers]." Docket no. 1 at 73.

[3] As an example, Polaris points to Claim 16 of its '344 patent. Docket no. 28 at 11. According to Polaris, this claim covers a *system* that is completed by Dell and is only infringing in the way that Dell uses NVIDIA components in conjunction with other components—"[A]ny NVIDIA-provided GPUs (which include a processor)

2

Defendants filed numerous counterclaims. Almost all of them seek declaratory judgments of non-infringement and invalidity on each of the patents-in-suit. *E.g.,* Docket no. 19 at 24, 27. NVIDIA also includes a counterclaim for breach of contract. *Id.* at 32.

Defendants jointly filed the motion to transfer venue (Docket no. 25) that is now before the Court. Defendants primarily seek a transfer to the U.S. District Court for the Northern District of California. Alternatively, they seek a transfer to the Austin Division of the U.S. District Court for the Western District of Texas. The parties presented argument on this motion at a status conference on November 10, 2016, and the Court took the motion under advisement. For the following reasons, the Court GRANTS the motion and transfers this case to the Northern District of California.

## DISCUSSION

### I.   Standard of Review

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In analyzing motions to transfer venue in patent cases, the Federal Circuit applies the law of the circuit in which the district court is located; therefore, Fifth Circuit law governs. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000). A motion to transfer venue under § 1404(a) involves a two-step analysis. *McCloud v. McClinton Energy Grp., L.L.C.*, No. 5:14-CV-620-XR, 2014 WL 6388417, at *2 (W.D. Tex. Nov. 14, 2014). First, the court must decide whether the case might have been brought in the forum to which transfer is

---

that are sold uncoupled to a relevant memory component are not accused of directly infringing Claim 16, because the accused system that includes the NVIDIA GPU coupled to third-party memory is only fully assembled when Dell assembles the motherboard for use in its products. It is the coupling on Dell's motherboard of the various components that creates the accused, directly infringing system, and that coupling is performed by Dell." *Id.* This is the only specific example identified by Polaris of Dell independently infringing. On this specific claim, Defendants argue that much of it relates to NVIDIA's components, and to the extent that it relates to Dell's manner of use of NVIDIA's components, "Dell itself does not design or implement the connections connecting the NVIDIA components to memory." Docket no. 33 at 9; Docket no. 33-1 at 2.

3

sought. *Id.* Second, the court must decide whether a transfer is warranted for the convenience of the parties and witnesses, and in the interests of justice. *Id.*

The court considers a number of factors, both private and public, in determining whether transferring venue serves the convenience of the parties and witnesses as well as the interests of justice. The "private interest factors" include: (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen of Am. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). The court also considers the following "public interest factors": (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.* None of these factors is individually dispositive. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201 (5th Cir. 2004).

The United States Supreme Court considers a plaintiff's venue selection as his or her "venue privilege," noting that "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581–82 (2013). As a result, when the court is not satisfied that the transferee venue is clearly more convenient than the plaintiff's chosen venue, the plaintiff's choice should be respected. *In re Volkswagen II*, 545 F.3d at 312; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis. Rather, the plaintiff's choice of venue corresponds to the burden that a moving

party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue." (citing *Volkswagen II*)).

## II.   Relevant Parties, Witnesses, and Evidence

### a.   NVIDIA

NVIDIA's headquarters is in Santa Clara, California. Docket no. 25-16 at 2. It houses nearly all of NVIDIA's relevant documents, some of which are physical documents, and approximately 3,820 employees (2,630 of whom are "knowledgeable about all aspects of the accused products and both electronic and physical documents and evidence."). *Id*. at 2. Marketing, research, and development of NVIDIA's accused products all occurs in Santa Clara. *Id*. Seven named Chip Managers—one for each accused product—are based in Santa Clara, and these Chip Managers are responsible for all aspects of design and development of the accused products. *Id*. at 2–3.

Outside of the Santa Clara headquarters, NVIDIA has an Austin office of 300 employees, over 100 of whom "are engineering resources who work with the employees in Santa Clara on the accused products." *Id*. at 3. NVIDIA identified one Austin-based engineer as being "heavily involved in the design and development of at least one of the accused mobile processor products." *Id*. This engineer reports to a Santa Clara-based NVIDIA employee. *Id*.

### b.   Dell

Though based in Round Rock, Dell sources and assembles many of its products through third parties. Docket no. 25-1 at 1. Dell did not design NVIDIA's components, but purchased them as designed from NVIDIA. *Id*. A Round Rock-based team of 19 Dell individuals "had primary responsibility for the selection of the graphics cards and GPUs incorporated in the accused [Dell] products." *Id*. As it relates to the accused products, when Dell purchases and

integrates graphics cards, it usually lacks input on the design of connections between components. Docket no. 33-1 at 2. In addition, third parties generally use NVIDIA's instructions to connect NVIDIA's GPUs to memory in Dell's products, with Dell employees providing minimal instruction only when necessary. *Id.*

### c. Polaris

Polaris is an Irish limited company that is a wholly-owned subsidiary of Wi-LAN, Inc., a Canadian corporation based in Ottawa. Docket no. 28-1 at 2. Most of Polaris' relevant documents and witnesses are located in Ottawa. *Id.* Polaris is not the original inventor of the patents, but is an assignee and the present owner of them. Docket no. 1 at 3.

### d. Evidence and Witnesses from Non-Parties

#### i. SK Hynix

Both parties seem to agree that SK Hynix is a third party that will have relevant evidence and potential witnesses. Polaris' infringement allegations implicate the use of either or both Defendants' products in conjunction with industry standard memory; SK Hynix is the party from whom Defendants state that they purchase this memory. Docket no. 25 at 10. In its response, Polaris does not object to Defendants' characterization of SK Hynix as the supplier of memory, and even identifies certain SK Hynix memory in its complaint as the kind of memory used in conjunction with Defendants' accused products. Docket no. 1 at 74–76.

SK Hynix is a Korean corporation. Docket no. 28-5 at 2–3. Its American headquarters in San Jose, California is its only Research and Development facility in North or South America. *Id.* It also has a sales office in Austin. *Id.*

6

### ii.  Industry Standard and Prior Art Witnesses

One of the issues in this case is the industry standard memory that Defendants' products and components utilize. *See* Docket no. 1 at 2. The standards for this memory were set at a series of industry meetings.

According to Defendants, third parties who participated in and have knowledge of the standards meetings "will be found in the Northern District of California." Docket no. 25 at 5. In particular, they point to Qimonda, a prior owner of the patents-in-suit, who "had an obligation to disclose its patent activity to the standards body, and was obligated to license the patents under reasonable and non-discriminatory terms." *Id*. Defendants identify Jeffrey Chung, a former Qimonda employee who is currently based in San Francisco, as an individual with knowledge of the standards meetings. *Id*.; Docket no. 25-8 at 2.

Defendants also point to five entities with a presence in Northern California that likely participated in the standards meetings by working collaboratively to develop these or similar patents.[4] Docket no. 25 at 6. Polaris points out that at least three of these five entities have a Texas presence, bringing them within the subpoena power of a district court in either San Antonio or Austin.[5] Docket no. 28 at 16.

Defendants add that these witnesses, along with others located in Northern California, are also likely sources of prior art and that some are previous assignees of the patents-in-suit. *See* Docket no. 25 at 6 (citing Docket nos. 25-2, 25-13, and 25-14). Polaris does not contest the whereabouts of these witnesses or provide locations of other similar witnesses, but argues that such witnesses are rarely called at trial.

---

[4] These entities are AMD, Altera, Etron, SK Hynix, and Intel. Docket no. 25 at 6.
[5] According to the declarations and evidence provided by Polaris, SK Hynix has a sales office in Austin, AMD has an office in Austin, and Altera has an office in Richardson, Texas. Docket nos. 28-5, 28-14, and 28-15.

### iii.  Inventors of the Patents-in-Suit

The inventor of one of the six patents-in-suit is located in the Northern District of California; another is located in Austin. Docket no. 25-2. Of the other six inventors listed on the four remaining patents, one is located in each of Georgia, Colorado, and Idaho, and three are in Germany.[6] *Id.*

### iv.  Prosecuting Attorneys of the Patents-in-Suit

There are six prosecuting attorneys listed on the patents-in-suit. Two are located in Texas (one in Houston, one in Dallas). Docket nos. 28-7, 28-8. One is located in the Northern District of California. Docket no. 28-6. The others are located in New York, Florida, and Maryland. Docket nos. 28-9, 28-10, and 28-11.

## III.   Application

The parties agree that this action might have been brought in either the Northern District of California or in the Austin Division. Moreover, the parties agree that one private interest factor—other practical problems that make trial easy, expeditious, and inexpensive—and three of the four public interest convenience and justice factors—administrative difficulties of court congestion, familiarity with forum and governing law, and avoidance of unnecessary problems of conflict of laws—are neutral. Accordingly, the Court turns to the contested convenience and justice factors.

### a.   Private Interest Factors

### i.   Relative Ease of Access to Sources of Proof

Defendants argue that the majority of the evidence in this case is under NVIDIA's control in the Northern District of California. They argue that the most evidence-intensive issue in this

---

[6] The present locations of two of the three German inventors are not presently available, but the most recent information indicates that they were in Germany.

case is whether NVIDIA is infringing because all of the infringement claims in this case—including those against Dell—can be resolved by determining whether NVIDIA's component products are infringing. They argue that "[w]hile the Federal Circuit has observed that 'the bulk of the relevant evidence usually comes from the accused infringer' in patent infringement cases, that is not the case here where Dell does not design or develop the accused technical functionality, but simply resells it in its products." Docket no. 25 at 14. From this perspective, Defendants argue that Dell's alleged infringement is conditional upon NVIDIA's alleged infringement; if NVIDIA does not infringe, neither does Dell. Docket no. 33 at 10. Based on this interpretation of Polaris' claims against Dell—that they are *peripheral* to the claims against NVIDIA—Defendants focus on evidence in California because this evidence will be dispositive of the entire case.

Polaris, on the other hand, argues that for some of the patents and claims, Dell infringes independently of NVIDIA because of the way Dell combines an infringing NVIDIA product with other components. *See supra* footnote 3. It argues that this manner of infringement on Dell's part warrants stronger consideration of Dell's ties to the Western District of Texas because this independent infringement will turn on evidence that is under Dell's control in Round Rock.

There is no evidence located in San Antonio, so this factor favors transfer to either the Northern District of California or the Austin Division. Taking stock of the parties' arguments on whether Polaris' claims against Dell are peripheral to those against NVIDIA, this factor weighs in favor of transfer to the Northern District of California.[7] The main patent infringement

---

[7] The question of peripheral patent causes of action does not have independent legal significance as a factor or requirement in this transfer analysis. On this point, the parties argue over the meaning of cases such as *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804 (E.D. Va. 2001) and *Samsung Elecs. Co. v. NVIDIA Corp.*, No. 3:14-CV-757, 2015 WL 1526438 (E.D. Va. Apr. 3, 2015). To the extent that Polaris argues strictly that "Dell's contacts in the Western District of Texas matter" to a normal transfer analysis, Docket no. 28 at 13, the Court agrees, and considers Dell's operations as they fit into § 1404(a)'s factors. The Court clarifies, however, that

allegations in this case are against NVIDIA. Polaris alleges that the parties infringe six of its patents, with NVIDIA infringing all six and Dell infringing only three; of these three that Dell allegedly infringes, at least some of Polaris' allegations are that Dell infringes by merely re-selling already infringing NVIDIA products.[8] The bulk of NVIDIA's evidence is in California. Though a potentially relevant NVIDIA engineer is based in Austin, this engineer alone does not indicate that evidence of NVIDIA's infringement will be relatively easier to access in Austin than in Santa Clara—this engineer reports to higher-ups in California, and NVIDIA's presence in California dwarfes its presence in Texas, even considering this engineer. The most important people to NVIDIA's accused products (the seven Chip Managers) are in Santa Clara; NVIDIA's Santa Clara headquarters houses more than 10 times the number of employees than the Austin office and more than 20 times the number of employees who have knowledge of the accused

---

finding whether all claims are peripheral is neither necessary to nor dispositive of this motion to transfer, as Polaris indicated might be the case at the November 10 status conference.

Cases dealing with peripheral patent causes of action addresses a different scenario and type of motion. *E.g.*, *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804 (E.D. Va. 2001). In such cases, a transferee venue's lack personal jurisdiction over one of multiple defendants makes transfer impossible because the case could not have been originally brought in the transferee venue. *Id.* at 809–11. Courts then consider whether to *sever* the claims against each defendant, *transfer* those that could have been brought in the transferee venue, and *stay* those left behind because resolution of the transferred claims would determine the remaining peripheral claims. *Id.* at 811–16.

In *Samsung*, for example—a case that both parties contend supports their position—two patent defendants moved to sever, transfer, and stay. *Samsung*, 2015 WL 1526438 at *1 (E.D. Va. 2015). The law applied by the court indicated that a motion to sever, transfer, and stay could be granted only if the claims were peripheral. *Id.* Finding only that one patent claim was not peripheral, the court denied the motion on this basis alone without conducting a separate § 1404(a) analysis. *Id.* As noted, Defendants in this case seek simply a transfer. They do not seek the severance, transfer, and stay sought by the defendants in *Samsung* and similar cases.

Dell's operations will be considered in the traditional § 1404(a) analysis, but whether the claims against Dell are peripheral does not permit the Court to bypass the § 1404(a) analysis in either direction. The facts of this inquiry merely overlap with some private interest factors in the normal § 1404(a) analysis, such as relative ease of access to sources of proof and cost of witness attendance. *See Penda Corp. v. STK, LLC*, No. CIV.A. 03-5578, 2004 WL 2004439, at *2 (E.D. Pa. Sept. 7, 2004) (discussing the peripheral nature of patent claims against a re-seller within a discussion of a private interest factor in a § 1404(a) transfer). Accordingly, the Court does not reach the question of whether Polaris' claims against Dell are peripheral because it is neither necessary to the determination of this motion to transfer nor appropriate for decision in light of the relatively undeveloped record in this case. *See TiVo Inc. v. AT&T Inc.*, No. 2:09-CV-259, 2010 WL 11436066, at *3 (E.D. Tex. Sept. 17, 2010) (withholding a decision on whether infringement claims against one defendant were peripheral to claims against another defendant because such a finding "requires a more fully developed record and would be premature at this time.").

[8] "The allegations against Dell *include* patent claims that are satisfied by Dell-made systems that include graphics processors or cards (provided by NVIDIA) coupled to memory (provided by third parties) via circuitry." Docket no. 28 at 11 (emphasis added).

products; the bulk of NVIDIA's marketing is done from Santa Clara. Insofar as NVIDIA is concerned, the Northern District of California is clearly the more convenient forum in terms of access to evidence.

Considering Dell's operations in Round Rock, most of evidence in this case will still be easier to access in California than in Austin. Without making a finding on whether *all* of Polaris' claims against Dell are peripheral, at least *some* of Polaris' claims against Dell are.[9] Though Round Rock will house some sources of proof on whatever non-peripheral claims Polaris asserts, sources of proof on the majority of claims—those asserted against only NVIDIA and those asserted against Dell that are admittedly peripheral to claims against NVIDIA—are more easily accessible in California than in Austin.

In addition, Dell's operations in Round Rock as they relate to this lawsuit, and therefore the likely ease of access to evidence, are not to be overstated. William Guerra, Director of Graphics Engineering at Dell, stated that Dell itself does not connect processors and GPUs to memory, which is the act that Polaris alleges supports its non-peripheral claims. Though a Dell team based in Round Rock selected NVIDIA's components,[10] the evidentiary significance of this choice is reduced by the fact the implementation of this decision (i.e. the connecting of NVIDIA's components with other components into Dell's products) is carried out by third parties.

Polaris argues that "NVIDIA and Dell 'cooperate and act in concert' in [the Western District of Texas] to design and develop Dell's hardware combining and integrating NVIDIA's graphic processors and cards to make Dell's infringing systems." Docket no. 28 at 15. Access to

---

[9] Polaris identifies only one claim in one of the patents-in-suit as justifying a non-peripheral allegation against Dell. Though the Court recognizes Polaris cited this claim as an example, Polaris identifies no other similar claims in its briefings, nor did it do so at the November 10 status conference. *See also infra* footnote 11.

[10] Defendants represented at the November 10 status conference that numerous members on this 19-person team are in Taiwan, not Round Rock.

this evidence slightly favors a transfer to Austin. First, this evidence appears relevant only to whatever non-peripheral claims Dell asserts, which are not the majority of claims or issues in this lawsuit. *See id.* (referencing "Dell's infringing systems"). Second, the only issue to which this evidence is relevant is the Defendants' states of mind, which can likely be proven with relatively little evidence. Though this evidence might point to a transfer to Austin, it composes a small fraction of the total evidence compared to the evidence that will be presented regarding the more prominent issues in this case, and so ease of access to it is not afforded great weight.

For the reasons above, the ease of access to evidence factor favors transfer to the Northern District of California.

### ii.   Cost of Attendance for Willing Witnesses

When the distance between the existing venue and a proposed venue is greater than 100 miles, the Fifth Circuit's 100-mile rule dictates that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Austin is within 100 miles of San Antonio, but California is not. Accordingly the cost of attendance and inconvenience for willing witnesses weighs differently when considering a transfer to California.

Aside from the distance between an existing venue and a proposed venue, the weight of this factor also depends on whether the willing witnesses are non-party witnesses or party witnesses. District courts in the Fifth Circuit routinely afford more weight to the convenience and cost for *non-party* witnesses. *E.g., Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 690 (W.D. Tex. 2013). Still, "the court also appropriately considers the cost of attendance of *all* willing witnesses." *Mimedx Group, Inc. v. Tex. Human Biologics, Ltd.*, No. 1:14-CV-464-LY, 2014 WL 12479284, at *2 (W.D. Tex. Aug. 12, 2014) (emphasis original).

The Court again finds that this factor weighs in favor of transfer out of San Antonio. No potential witnesses are in San Antonio. Some witnesses—particularly those from Dell—would come to San Antonio from less than 100 miles away, diminishing but not negating the importance of this factor as to them in a San Antonio–Austin transfer. All other witnesses would come to San Antonio from further than 100 miles. Accordingly, this factor favors transfer, and the Court turns to whether this factor favors California or Austin from the perspectives of both non-party and party witnesses.

### 1.   Non-Party Witnesses

"'[I]t is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis.'" *Healthpoint*, 939 F. Supp. 2d at 690 (quoting *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc*., 867 F. Supp. 2d 859, 869 (E.D. Tex. 2012)).

The most important of the non-party witnesses is SK Hynix, the party from whom both NVIDIA and Dell purchase the memory that combines with their products to complete the alleged infringement. SK Hynix's importance is relevant even to any non-peripheral claims Polaris might assert against Dell.[11]

---

[11] In describing Dell's alleged infringement of Claim 16—the lone identified example of a non-peripheral claim—Polaris briefing states:

> For example, asserted Claim 16 of the 344 Patent recites '[a] system comprising: a processor; *a memory*; and a circuit coupled between the processor *and the memory* . . . .' NVIDIA's graphic cards (which include the processor *coupled to memory*) are accused of directly infringing Claim 16. But any NVIDIA-provided GPUs (which include a processor) that are sold uncoupled to *a relevant memory* component are not accused of directly infringing Claim 16, because the accused system that includes the NVIDIA GPU coupled to *the third-party memory* is only fully assembled when Dell assembles the motherboard for use in its products. It is the coupling on Dell's motherboard of the various components that creates the accused, directly infringing system, and that coupling is performed by Dell.

Docket no. 28 at 7. (emphasis added) (citations and footnotes omitted). SK Hynix supplies NVIDIA and Dell with the memory described in Polaris' characterization of this allegation.

Polaris points out that SK Hynix "has offices in the Western District of Texas." Docket no. 28 at 14. This characterization of SK Hynix's corporate operations glosses over the facts as presented—SK Hynix has a lone sales office in Austin. Docket no. 28-5 at 2–3. Polaris offers no explanation of how SK Hynix employees working in what appears to be a satellite sales office would have technical knowledge regarding the design and development of SK Hynix's memory.

On the other hand, SK Hynix's American headquarters is in San Jose, California. Though no individual is identified by name, it is far more likely that SK Hynix's technical witnesses with knowledge of the relevant memory components would be located in SK Hynix's American headquarters in San Jose—its only research and development facility in the Americas—rather than a satellite sales office in Austin. For this reason, the cost and convenience factor relating to the most important third party witness heavily favors transfer to the Northern District of California.

Convenience of other non-party witnesses also favors transfer to the Northern District of California, though the relative weight of convenience for these witnesses is lower, as it is less likely that they will be called at trial and even if they are, it is likely that fewer will need to be called.

As pointed out by NVIDIA at the November 10 status conference and in their answers to this lawsuit, NVIDIA's answers and counterclaims implicate the industry standards set for the memory at issue. *See* Docket no. 19 at 22–23, 32–35. NVIDIA identifies Jeffrey Chung as an individual, formerly employed by the prior owner of the patents-in-suit, who is based in California and who has knowledge of the relevant standards meetings. NVIDIA also identifies five entities with a presence in Northern California who will also have relevant knowledge of these meetings—SK Hynix, Altera, AMD, Etron, and Intel. Polaris argues that SK Hynix and

AMD have offices in Austin and Altera has an office in Richardson, Texas. As discussed, though, SK Hynix's presence in Austin is minimal compared to its presence in California. *See* Docket no. 28-5 at 2–3. Therefore, recognizing that SK Hynix favors a California transfer from this perspective as well, four other companies with knowledge of standards meetings have a presence in the Northern District of California, two others have a presence in Texas, and one named individual (Jeffrey Chung) is in the Northern District of California. On balance, cost and convenience to the standards meetings witnesses favors transfer to California.

Defendants also identify these same entities, along with California-based Rambus, as likely sources of prior art evidence. The convenience and cost to these witnesses favors transfer to California, but the relative weight of this factor with respect to these witnesses, though, is slight or non-existent for two reasons. First, prior art witnesses rarely testify at trial, which reduces but does not extinguish consideration of cost and convenience for these witnesses. *See PersonalWeb Technolgies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *8, n.13 (E.D. Tex. Mar. 21, 2013).[12] Second, Defendants suspect that prior art witnesses such as Rambus and Intel "developed, demonstrated, and sold products that implement the technology described in the prior art references." Docket no. 33 at 15. If this is indeed the case, this could be the type of prior art evidence that could be appropriate for live testimony, but Defendants only "believe" this to be the case. *Id*. It could well be that these prior art witnesses may *not* "have important evidence to offer that is not reflected in the writings, such as evidence to establish a prior public use or an on-sale bar." *Advanced Processor Techs. LLC v. Atmel*

---

[12] Polaris cites *PersonalWeb* for the proposition that prior artists "rarely, if ever, testify at trial." *PersonalWeb*, 2013 WL 9600333 at *8 n.13; Docket no. 28 at 21. The court in *PersonalWeb* made this observation in a footnote after finding that § 1404(a)'s factor regarding the availability of compulsory process was neutral in that case because "[b]oth sides identified a significant number of inventors of prior art within the subpoena power of their desired forums." *Id*. at *8. Polaris' argument on this point overlooks that in *PersonalWeb*, prior art witnesses were neutral because they had an equal presence in both proposed forums, not because they are rarely called for trial. Therefore, while the Court tempers the weight to be accorded to prior art witnesses in recognition of the fact that they rarely testify at trial, their cost and convenience is at least to be considered.

*Corp.*, No. 2:12-CV-152-JRG-RSP, 2013 WL 1279053, at *5 (E.D. Tex. Mar. 26, 2013). Still, even if witnesses may not have much to add to the writings through their live testimony, the weight of this factor is only diminished and not eliminated. *See id.* ("On balance, the Court finds that some weight, but not substantial weight, should be accorded the 33 references."). Accordingly, prior art witnesses favor transfer to the Northern District of California, even if only slightly so.

The only non-party witnesses for whom trial will be more convenient in Texas are the patent inventors and prosecuting attorneys. One inventor is located the Northern District of California and another is located in Austin. The other three American-based inventors are in Idaho, Colorado, and Georgia, and three more inventors are in Germany—all closer to Texas than California. Of the prosecuting attorneys, one is located in Northern California, two in Texas (Houston and Dallas), one in New York, one in Florida, and one in Maryland. Because all of these locations are more than 100 miles from both California and either venue in Texas, the relative inconvenience and cost to these inventors and prosecuting attorneys increases in direct proportion to the additional distance to be traveled. This factor favors transfer to Austin from the perspective of the inventors and prosecuting attorneys, though the Court notes that this inconvenience is limited for the German inventors, as the 100-mile rule has not been "rigidly applied" in patent cases where the added distance is small compared to the total distance to be traveled. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (recognizing that the added mileage of a transfer from the Eastern District of Texas to the Northern District of California was not to be given "substantial weight" from the perspective of witnesses traveling from Europe).

In sum, the cost and convenience of the most important third-party witnesses—those from SK Hynix—heavily favors transfer to the Northern District of California. In addition, cost and convenience for other third party witnesses, including those with knowledge of the standards meetings and prior art, also favor transfer to the Northern District of California, but only slightly so. To the contrary, this factor favors transfer to Austin from the perspective of the patent inventors and prosecuting attorneys, but their increased cost and inconvenience is not significant enough to outweigh that of all other non-party witnesses.

### 2.  Party Witnesses

As previously discussed, even if *some* of the claims in this lawsuit relate to Dell's non-peripheral infringement of Polaris' patents, *most* of the claims relate to NVIDIA, either as an alleged infringer itself or as an alleged supplier of infringing components to Dell, a re-selling infringer. With this in mind, NVIDIA's witnesses will be the most important party witnesses at trial and will be called in the greatest number. Though NVIDIA identified a single Austin-based engineer who might have important knowledge in this case, the *seven* engineers most likely to testify—the Chip Managers—are all California-based. Therefore, the burden on the party witnesses who will likely have to attend trial in the greatest number is far lower in California than in Austin.

The Court recognizes that an individual from Dell's Round Rock team that selected the NVIDIA products may be a trial witness, but tempers the potential value of such a witness in the context of the larger lawsuit. This witness's testimony would relate only to Polaris' non-peripheral infringement allegations against Dell, which, as discussed, are not the majority of allegations in this lawsuit even assuming that Polaris validly states any non-peripheral claims. Furthermore, the overall burden of making a Dell witness travel is, at worst, an even trade-off—

if trial is held in Austin, the critical NVIDIA witnesses will likely be forced to travel from California while a Dell witness can stay local; if trial is held in California, a Dell witness may travel,[13] while NVIDIA's critical witnesses can stay local. Granting a transfer to California could be viewed as merely "shift[ing] the inconvenience" among parties. *X Techs., Inc. v. Marvin Test Sys., Inc.*, No. SA-10-CV-319-XR, 2010 WL 2303371, at *6 (W.D. Tex. June 7, 2010). But this shift of convenience occurs not between a defendant and a plaintiff with different views on transfer, but from Defendant NVIDIA to Defendant Dell, who desires the transfer. *See id.* ("Though the San Antonio Division of the Western District of Texas is clearly less convenient to Defendant's witnesses than the Central District of California, transferring the case to California would merely shift the inconvenience [from Defendant's witnesses] *to Plaintiff's* witnesses." (emphasis added)). Because the most inconvenienced party is Dell, who desires transfer, and because the increased cost to Dell is at least offset by savings to NVIDIA, the cost for Dell's witnesses to attend does not justify denying transfer.

Polaris argues the cost of attendance for its witnesses, traveling mostly from Ottawa, Canada, would be greater to California than to Austin based on distance and flight patterns. The Court accepts this argument—a flight from Ottawa to California is longer than one to Austin— and recognizes that the inconvenience to Polaris' witnesses favors Austin. Still, the importance of inconvenience for Polaris' witnesses is minimal because Polaris is only a recent assignee of the patents-in-suit and did not invent them, diminishing the technical importance of any testimony that Polaris' witnesses could present. More importantly, when balancing the relative inconvenience between NVIDIA, Dell, and Polaris witnesses, the total inconvenience of making all party witnesses travel to Austin would be greater than making them travel to California.

---

[13] At the November 10 status conference, Dell indicated that, due to its presence in the Northern District of California, its employees traveling from Round Rock would have offices from which to work remotely, making travel to California convenient for them.

In sum, because NVIDIA's party witnesses are likely to be called in the greatest number, more weight is accorded to their cost and convenience, which will be maximized in California. Though Dell's witnesses will be more inconvenienced in California, their importance to trial is lower than NVIDIA's witnesses, and Dell, who seeks this transfer, accepts the increased burden and cost that would accompany a transfer to California. Though Polaris' witnesses would have to travel slightly further to California, their inconvenience does not outweigh that of the other parties', and these party witnesses would be the least likely to be called in this case. For the reasons stated above, the cost and inconvenience to both non-party and party witnesses favors transfer to the Northern District of California.

### iii. Availability of Compulsory Process to Secure Attendance of Witnesses

Under the Federal Rules, a district court may compel attendance of a non-party witness at a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person" FED. R. CIV. P. 45(c)(1)(A). Beyond 100 miles, non-party witnesses may be compelled to attend trial if they are in the state in which the district court sits and "will not incur substantial expense." FED. R. CIV. P. 45(c)(1)(B).

The parties admit that this factor is neutral in a transfer from San Antonio to Austin; the dispute on this factor concerns the difference in availability of compulsory process between the California district court and either Texas district court.

The parties' main arguments on this factor mirror the arguments on the cost and convenience factor because both depend on where non-party witnesses are physically located in relation to trial. Polaris adds that Defendants have not identified or proven that specific individuals employed by the corporate third parties are located in California rather than Texas. Docket no. 28 at 15.

Though there is a strong overlap between this factor and the cost and inconvenience for traveling witnesses, the Court finds that this factor is neutral for a reason not addressed by the parties. Regardless of where relevant witnesses are located, neither Polaris nor Defendants argued or proved that the availability of compulsory process would be necessary to secure these witness' attendance at trial, making this factor neutral. *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 689 (W.D. Tex. 2013) ("[W]hile [Defendant] has mentioned certain witnesses that live in and around [the proposed venue], it has not argued that compulsory process would be necessary to secure their presence at trial. In the absence of such claims, this factor is neutral."). Because no party has argued that compulsory process is necessary, this factor is neutral.

### b.  Public Interest Factor—Local Interest In Adjudicating Local Disputes

Turning to the public interest factors in the § 1404(a) analysis, the parties do not contest three of these four factors, and the Court finds that they are neutral, as mentioned above. The only factor the parties contest is the local interest in adjudicating local disputes. The Court finds that this factor favors transfer; as between the Northern District of California or Austin as the proper transferee venue, the Court recognizes that it is a close call, but this factor favors Austin.

The parties' arguments on this factor are simple. Defendants argue first that San Antonio has no local interest in this controversy because no parties are located here. As between California and Austin, Defendants argue that California is proper because NVIDIA is headquartered there. Polaris, on the other hand, argues that this factor favors the Western District of Texas because of Dell's large presence in Round Rock and NVIDIA's small presence in Austin.

NVIDIA has its 3,820 employee headquarters in California and an office of 300 employees in Austin. Of these employees, 2,630 in California and over 100 in Austin work on

NVIDIA's accused products. Dell has its headquarters in Round Rock, but the parties provide no further description or statistics relating to the precise size of Dell's operations in either potential forum either as a whole or as it relates to the accused Dell's accused products.[14] Polaris merely states in its response that Dell is "a $50 billion a year company headquartered in this District, with more than 100,000 worldwide employees and with a subsidiary office in San Antonio." Docket no. 28 at 19.

Again, this factor does not favor San Antonio. Dell's main presence in the Western District of Texas is in Round Rock in the Austin metropolitan area, not in San Antonio. NVIDIA's Texas presence is in Austin. Polaris has provided no explanation for why a lawsuit based in a different city nearly 80 miles away is a local controversy in San Antonio.[15]

This factor favors transfer to Austin, but by a narrow margin. The only evidence cited by the parties in terms of size of operations relates to NVIDIA in both California and Austin. Aside from describing Round Rock as Dell's headquarters, the record does not describe Dell's operations with specificity. Similarly, there is no indication regarding the size of Dell's presence in Northern California, if indeed it has one. Moreover, Polaris' argument that Dell is a large company with high revenues and many employees worldwide does not specifically tie itself to Dell's local presence in Austin. Still, the Court recognizes that Dell is a major corporation headquartered in Round Rock, and a headquarters in a certain location gives that location a strong local interest. Counterbalancing Austin's local interests in the affairs of Dell and

---

[14] Dell also represented at the November 10 status conference that it had some presence in the Northern District of California, though it does not describe or mention this presence in its briefing.

[15] Polaris argues that NVIDIA has a "GPU research center" in San Antonio. Docket no. 28 at 19. As Defendants point out, however, this "research center" is merely an NVIDIA-supported academic program at the University of Texas at San Antonio. Docket no. 33 at 17 (citing NVIDIA's website). There are 128 such centers worldwide. *See id.* Other similar centers are located at the University of California, Berkeley and Santa Clara University (in the Northern District of California) and Texas State University (in the Western District of Texas). *See id.* Consideration of these centers is neutral in terms of local interest.

NVIDIA, and Northern California's local interests in the same, the Court finds that this factor favors transfer to Austin, but not by an overwhelming margin.

## CONCLUSION

No convenience and justice factors favor keeping this case in San Antonio. Five factors are neutral (compulsory process; other practical problems; administrative difficulties of court congestion; familiarity with forum and governing law; avoidance of conflicts of laws issues). Only one factor (local interest) favors transfer to Austin, but the relative importance of this factor is slight compared to the remaining two factors (ease of access to evidence; cost and convenience for traveling witnesses), which are the most important factors and strongly favor transfer to the Northern District of California.

Accordingly, the Court hereby GRANTS Defendant's Motion to Transfer (Docket no. 25) under § 1404(a). It is hereby ORDERED that this action be TRANSFERRED to the United States District Court for the Northern District of California.

It is so ORDERED.

SIGNED this 5th day of December 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE